My name is Scott Martin. I represent Mr. Melton on appeal of his conviction and sentence in this case of attempted child enticement. The appeal raises two issues. The first issue is whether a comment made by the district judge during the jury instructions distorted or added to the evidence requiring reversal of the conviction on plain error review. The second issue is whether the district court abused its discretion when it imposed an unreasonably restrictive special condition of supervised release relating to internet access. With the court's permission, I'll address the issues in that order. When giving the jury instructions, a judge may analyze and dissect the evidence to assist the jury in reaching a just result, but may not distort it or add to it. In this child enticement case, the defense was entrapment. During the jury instructions, the judge commented on evidence that was crucial to the issue of predisposition, and that's Mr. Melton's Craigslist ad, which was government's exhibit number one. Specifically, what the judge said was, quote, but the ad itself, as I recall the wording there, you're going to have it there also, suggested a desire for a minor. For that brief... Your Honor... A minor is under 18. A minor... Do you agree on that? A minor is under 18, Your Honor. And as Mr. Melton explained in his post-arrest interview, which was in evidence, what he meant by young teen was a person 18 or 19 years old. Years of age. Well, you've got to look at it from Judge Kagan's perspective. Did he distort what that ad said? The ad said a young teen. How is it distorting it to say that's a minor? Well, it's at the very least he was adding to it, Your Honor, for a very brief moment. What do you think an old teen is? How old's an old teen? I, young, what he meant by young teen, a young person who is a teen. Why does it matter what he meant? The ad says what it says. What if he said, what if he said, oh, I meant I was looking for a 50-year-old woman? That would override what the ad says? Your Honor, it's our position that the judge essentially was acting as a witness, testifying about what he recalled about what the ad said, and what he said was inconsistent with what Mr. Melton said. I think it was entirely accurate to say a young teen is a minor. I mean, you have to do some — show me how you get to a young teen not being a minor. Well, Your Honor, in this, Mr. Melton explained exactly what he's meant in his post-arrest interview, which is a young teen. He meant 18 or 19 years old. In this case, the judge did give an instruction on entrapment, and predisposition was an issue in this case. And even the judge said that this particular — viewed in this way, this particular piece of evidence, the ad would be the clincher that defeated the entrapment defense. But essentially what the judge did by making this comment was make it so. And as I said in the interview, which the jury had in evidence, Mr. Melton's explanation for the ad was that it was badly worded, that he was not a minor, and that he was looking for a role-play type of situation with — Which is completely belied by the fact that once the age — the undercover agent says, I think, what, 14 years old is my daughter, he — I mean, I won't even get into it, but the graphic messages — I'm not going to talk about him here explicitly, but repeatedly, in graphic sexual terms, he's all excited about doing all kinds of things with this 14-year-old. So you're saying that's consistent with his testimony, that he wasn't interested in young teens? The defense was that he — the advertisement was for a role-play type of situation. And then, with the government's very first communication in the e-mails, which was, you know, lucky for you, we're an incest family looking for an addition, let me know. And then he responds, let — tell me about your daughter and yourself, at which point the agent begins to talk about how — why I'm a 32-year-old single mom, in case he is an eighth-grader, and then it goes from there. The defense — He's really excited about it all, so that doesn't show predisposition. Once he knows — forget — I mean, if you don't want to get into what young teen means, we know what 14-year-old means, and he's in eighth grade, and he's super excited about meeting her and doing all kinds of things with her. I understand your — I understand what you're saying, Judge, but our position is that this is for the jury to decide. Entrapment was the defense, and that by making these comments, the judge essentially trespassed on the jury's functions and responsibilities. But the judge — There were no — the trial counsel made no objection when — That's correct, Your Honor, and that's why we're on plain-error review. The judge — Let me stay with that just a moment. More than the consequences of appellate review standards, there's also the inference that the failure of counsel, able counsel, in this context, to bring it to the Court's attention. There are many ways they could do that without appropriating their own role. Suggests that the counsel didn't understand that to be, as you are now characterizing it, taking it away from the jury, the ultimate clincher, communicating that to the jury. Because you say that we would have to find that this was the clincher, that he preempted the jury's role, et cetera, et cetera. How is it that the counsel missed that? I'm sorry. I missed the last part of your question, Your Honor. How did it — how did counsel miss something that you say is so plain and obvious? It — it — Your Honor, we — counsel missed it. It — the judge went off-script here and began commenting on the evidence. Well, that's when your errors go open, when the judge goes off-script. I mean, I don't understand that. Your Honor, and that's why we're on plain-error now, is because it was not objective to you. I understand that, but I'm suggesting to you that — that the failure of counsel here under these circumstances is — it's — to me, it — and then one inference from that is that — that the reasonableness of the construction, and I'm now pointing on it, it's taxed by that circumstance. It's just one piece of the puzzle, that's all I'm saying. Your Honors, our position is this case is similar to Cisneros, which is a case cited in our brief. It's a drug case where this Court found that a judge had added to the evidence when the judge — about a key witness's demeanor and credibility, when the judge brought to the jury's attention something they may have missed. In that case, it was a signal of encouragement that the witness gave to the defendant as he was leaving the stand. The Court found that the comment seriously impaired the right to a fair trial and reversed. Our position on this issue is that the judge essentially did the same thing, acted briefly as a witness, added to the evidence, and that the — we should be entitled to a new trial. If you're — with your permission, I'd like to move to the second issue. Why do you think the ad was so key to the — I think it's clear why it's dead on the ad, but assuming you're right on the ad, what the ad meant, why aren't all the subsequent communications, in which most of the explicit sexual talk is really instigated by your client from my reading of it, why isn't that enough to show predisposition so this whole ad thing doesn't even matter? Again, given that you have the burden on plain air to show the substantial effect on the verdict. That's true. At trial, it was the prosecutor's burden to show that Mr. Melton was not entrapped. The judge, Judge Kazin, who was there at trial, you know, evaluating the evidence, felt that this ad was the clincher. He did give an entrapment instruction, which showed that — Why do you say Kazin thought the ad was the clincher? He said so, because he said so. And I'll read it to you. He said — okay. He's saying — this is in the charge conference. He said, if the agents did no more than give him the opportunity, then he's not a victim of entrapment. I think that's — if I were ruling as a judge, I would think that that's what we have here, because he was ready, willing, and able. He put the — I think the clincher is, is that ad he puts, you know, kind of looking for love in all the wrong places or something, quoting, you know, the Johnny Lee song there. But what the judge is saying is he thinks that this is the crucial piece of evidence on predisposition. That was in a sidebar conference? This was in the jury charge conference before trial. Did the jury hear that? No. No, the jury didn't hear that comment. But in the government's closing argument, and — I mean, the government was arguing — this is what the government was arguing. When I get — I mean, I think it's a good piece for the government, but no one — Is it — would they be lost without it? I mean — Your Honor, that's a question for the jury. And our position is that's a question for the jury. And the jury had it all before them. The jury didn't have all — You have to show — you have to show, given the plein air posture, the impact on the verdict. That's — that's true, and we're saying our position is there's a reasonable probability of a different outcome at trial, and that's — even the judge — You're reading all those text messages. All right. That's our position, Your Honor. Now, if I may, I'd like to move to the second issue regarding the supervised release condition. A special condition cannot impose any greater deprivation of liberty than is reasonably necessary to advance deterrence, protect the public from the defendant, or advance the defendant's correctional needs. For sex offenders, the guidelines generally recommend a condition limiting use of a computer or an interactive computer service in cases in which the offender used such items. Here, the Court imposed a special condition entitled no Internet access without permission. It stated you must not access the Internet except for reasons approved in advance by the probation officer. Our position is that, like the special condition in sealed juvenile, this one is overly restrictive insofar as it requires Mr. Melton to seek prior approval from the probation officer every single time he must access the Internet, even for innocent purposes such as bill-paying, making online calls. Well, it doesn't really say that, does it? It says no access without reason. That's correct. It says you must not access the Internet except for reasons approved in advance. Well, the probation officer can approve reasons that can be applied more than one time. And if we make it clear that that's what that means, as we have done in a previous case, well, I don't see that that's a real burden. Your Honor, that's what the relief that we're asking for is basically the same thing that the defendant in sealed juvenile got. In that case, the condition was similar. It stated the juvenile shall not possess or use a computer with access to any online computer service at any location without prior approval of the probation office. The court, this court, interpreted that language as requiring the juvenile to request permission every time he needs to use the computer or every time he needs to access the Internet. This court recognized that Internet, access to the Internet is essential to functioning in today's society, and the court, so the court instructed the district court not to construe or enforce the condition in this overly restrictive manner. And that's all we're asking for here. It's a similar instruction to district court. Why can't we just modify it ourselves and give it the less restrictive meaning? That would be fine with us as well. No re-sentencing required. Our preference would be for the actual district court to enter a judgment with the amended language, the modified language on it. That way it would be there and there wouldn't be a two-document. Well, that's nice, but it's much easier than sending the whole case back. That's true. And that's another way to handle it, would be just to modify it for the Fifth Circuit. But our preference would be for the remand to enter a new judgment with modified language. Unless there are any further questions, Your Honors, I'll wait until rebuttal. Thank you. Okay. Thank you. Mr. Berry? May it please the Court. Richard Berry for the United States. Mr. Martin. If I could, I'd like to back up just a second on the first issue as to the matter of entrapment. At the charge conference that Judge Higginbotham and the opposing counsel were discussing, Judge Kazin specifically said, I do not think that you have shown entrapment. I would not give it. However, I think that Fifth Circuit pattern charge is even and balanced and fair. And out of an abundance of caution, he didn't say abundance of caution, but out of a sense of fairness, he elected to give the entrapment defense. As this Court well knows, to get an entrapment instruction, the defendant must make a prima facie showing first he has a lack of predisposition to commit the offense and second, some governmental involvement or inducement more substantial than simply providing an opportunity or the facilities to commit the offense has been brought to bear. In this case, that did not happen. He did not testify. He has no burden to testify. The only time entrapment was discussed was in trial defense counsel's cross examination of the two witnesses who testified. As to Judge Kazin's statement, a teen, obviously I would agree with Judge Costa's statements, the Craigslist ad said, I would love a young teen. Young teen to be trained to be a daddy's little girl or a daddy's girl. Please respond, et cetera. Once he says younger female, once he says young teen. Simple English construction, as the prosecutor noted in closing argument, there are seven ages that involve teenage, 13 to 19. The median or mean being 16. A young teen would be 13 to 15. An older teen would be 17 to 19. Opposing counsel has in his brief a statement from Melton that his intent, his belief was young teen meant someone 18 or 19. That does not appear in the transcript. It may very well have been part of his videotaped interview that was played to the jury during the trial. But that information is not in the transcript because, as you undoubtedly know, the court reporter simply puts in tape played to jury. Be that as it may, as Judge Costa said, Melton worded the ad, Melton placed the ad. The government had absolutely no involvement in any portion of that. If he wanted an 18 or 19-year-old or a 35-year-old or a Labrador retriever, he could simply have said so. Young teen, simple common English usage suggests that young teen is 13 to 15 or possibly 13 to 16. In any event, it is below the statutory age of 18, which defines minor in the federal system. Melton chose young teen. Melton used young teen. And other than the agent's use of the phrase, lucky for you, we're an incest family, in her first email response to Melton, every single explicit sexual discussion, and there are discussions on Craigslist, there are discussions by text, there's discussions in Yahoo Check, every single sexual discussion was initiated by Daniel Melton. The agent followed up when Melton began the discussion, but every single explicit discussion of sex begins with the defendant, Daniel Melton. Judge Kazin was simply interpreting young teen as minor. It is a completely reasonable interpretation. Every single case from this Court that's reversed based on misconduct by the trial judge commenting on the evidence involves something far more egregious than this. Judge Kazin told a jury at the start of the trial, what I, the district judge, say is not part of the evidence. It is not to govern you. I will interpret the law, and you, the jury, will interpret the facts, right out of the pattern of instruction. In the closing instructions, he told them repeatedly, you are the judges of fact. He told them seven times, the government has the burden of proof. You interpret the facts, I will give you the law. The only thing that they complain about is Judge Kazin's selection of, I think that he said minor. And Judge Kazin prefaced his remark with minor and then immediately said, but look, you'll have the printed out Craigslist ad with you when you go back to the jury room. If there's any question, you can read it. The jury had transcripts of the Craigslist conversations. They had transcripts of the chat conversations, and they had transcripts of the email conversations. So there was absolutely no question that they were clearly and unequivocally instructed to consider the evidence for themselves, and Judge Kazin in no way, shape, or form committed any sort of error. Since there was no objection, of course, it's reviewed for plain error. The United States would submit there was no error.  As indicated by Judge Higginbotham's series of questions, trial defense counsel was sitting right there. This was not a six week RICO trial or a lengthy white collar trial. It was a one day enticing a minor case. There was argument and jury instruction on the morning of the second day and a verdict, I believe, before lunch. So the jury could hardly have forgotten what they heard yesterday morning, that you are the judges of fact. If there was clear error, then it certainly didn't affect his substantial rights, because the jury convicted and there's absolutely no indication that they would have done anything else had Judge Kazin not made that comment. If there's anything on the first issue, I'd be glad to address that. As to the condition of not using the Internet, it's absolutely not overly restrictive. In the first place, the objection at trial was this condition is a little vague. That objection, I would respectfully submit, is a little vague. There was no statement that this unduly restricts my future use of the Internet. The trial defense counsel came up with the example of, suppose when he gets out, he accesses a ‑‑ uses a Coke machine that has access to the Internet, an overzealous probation officer seeks to revoke his supervised release. And then defense counsel conceded that was an overambitious example. The simple fact of the matter is the only requirement is that he get advanced permission from the probation officer to use the Internet. And I would respectfully point out that he has 120 months to compile a list of Internet sites that he needs to visit with reasons why he needs to visit them and the circumstances under which he'd be allowed to use them. He has an abundance of time to decide what he wants to do on the Internet and why he wants to do it before he serves his 10‑year sentence. There's nothing overreaching. There's nothing unduly restricting his freedom. Are there any questions on the second issue? Thank you very much indeed. I'll get back to my 12 minutes. Thank you, sir. Your Honor, what I just heard on the first issue was a very nice jury argument as to why Mr. Melton was not entrapped. We're talking about the judge adding evidence to what was ‑‑ and in this case the evidence was the ad, and the judge essentially assumed the role of the witness again for a brief moment and testified about what he recalled that the ad said. And that is our complaint. As far as the interview, the interview wasn't evidence. It's Government's Exhibit No. 10. If there is this great difference between young teen and minor, because you wouldn't be here if he said young teen. If he said, Jury, you'll remember the ad said young teen, then you wouldn't be here, right? I'm sorry, I don't understand the question. If Judge Kazin had said, oh, and Jury, you remember that ad, it said he wanted a young teen, then you wouldn't be here. He said a desire for a minor. I recall the ad said a desire for a minor. And that's what this whole case was essentially about. Right. But so if you think there's such a big difference between young teen and minor, wouldn't ‑‑ he said to the jury, look at the ad, they would have looked at it, right? So they would have seen this big ‑‑ They would have seen that. They would have seen that the judge was so wrong in your view. If he had said it said ‑‑ they had the ad. You're the one saying there's such a big difference between young teen and minor. So when he tells the jury, look at the ad, though, you'll love the ad, you look at it. He said, but the ad itself, as I recall the wording, you're going to have to ‑‑ I know what he said. What I'm saying ‑‑ So I ‑‑ Mr. Melton explained in evidence, in the videotape, what he meant by that. And the jury was entitled to make its own decision about whether that ad was evidence, credible evidence. If young teen doesn't mean minor, as you say, the jury wasn't told by Judge Kazin, you'll have the ad to look at. If it's such a key piece of evidence, they're going to look at it. They would have realized, oh, that judge, he messed up. Look, it actually says young teen, which isn't a big problem. That's fine to ask for a young teen. In KRCA, which is the Supreme Court case from ‑‑ You don't answer my question. That's all right. This is the answer, Your Honor. The influence of the trial judge on the jury is necessarily and properly of great weight, and his lightest word or intimation is received with deference and may prove controlling. But all our case law says, if the judge says you're ultimately the one to have to decide, even though I said this, it's okay. And he says you look at the ad. He said you'll have the ad. He said you'll have it in there. Right. But he didn't give an immediate curative instruction like you have in the Blevins case, which we cited. Yes, he made these general statements about you are the ‑‑ But the rule is, you look at this holistically, it is what the total communication to the jury is. We've struggled for many years to encourage district judges to talk to the jury in plain language and to get away from the pattern of jury instruction stated in legalese. And so what you're forcing us to do is when a judge does that, they jump all over him because, oh, you may not have ‑‑ may have misunderstood it. But the standard is holistically, not just pick out this word and that word. Overall, that's the answer, and that's the inquiry that has to be made. And that's what I'm not hearing. In Blevins, Your Honor, where the ‑‑ it was a case where the judge did give an immediate curative instruction after commenting on, I believe it was evidence, uncontradicted evidence, okay, about a defendant's possession of a knife, but then immediately gave a curative instruction as well, saying you are the sole judges of the facts. Well, they get a curative instruction because somebody objected to it, and that's the whole purpose of the objection, too, is that if there is a misstatement or whatever, that's the time to correct it, and it's easily corrected. But so I think you'll find that that happened, but it happened because the counsel objected. They gave a curative instruction. They didn't voluntarily give it. It's true. We did not ‑‑ we did not object, but our ‑‑ That also explains why in the case you're talking about, too, there wasn't an objection and a curative instruction was given. Well, Your Honor, we ‑‑ our position is that we do meet the plain error standard here in light of cases going back to K. Arcia, that the third prong of plain error was met because it ‑‑ because as we've argued, this was the clincher. This is the most important piece of evidence, and the fourth prong is satisfied because the judge intruded on the jury's role as fact finder. One final question. When was the first time that the question of the ‑‑ of the judge's comment to the jury raised? In these proceedings, when was the first time that your present argument was made? The judge about the ‑‑ the issue one you're talking about? It wasn't. I mean, there was no objection to that. I know there's no objection, but where in the entire proceedings did that ‑‑ was that first ‑‑ was that argument first made? Oh, you're talking about the argument about what the ‑‑ The comment by the judge. Oh, by the judge. Okay. When did you first claim in these entire proceedings that that was a controlling issue? You supplanted the ‑‑ Okay. Well, that was in the jury charge conference when he said it in front of the lawyers when he said this ad is the clincher. No, no. And then he made the statement. I'm sorry. I'm not making myself clear. You're here on plain error for one on objection. Yes. My question is, when in these proceedings did you ever first complain about this? On appeal. About the judge's statement. What about the post‑verdict motions? We didn't file a post‑verdict motion complaining about this particular statement by the judge. Okay. So that's why we raised it on plain error for the first time on appeal. Well, you would still have had a plain error problem, but I'm just trying to understand. You didn't even go back to the trial court post‑verdict and for the motions at that injunction either. You never addressed this to the district court. And I'm giving you a hard time. I don't really believe you do that. You're a fine advocate and you're doing a very good job with a difficult problem. I appreciate your argument. Unless there are any further questions, I'll let Senator Breese. Thank you. Mr. Barrett. We'll call the third and final case for oral argument this morning.